Stephen J. Horace (*admitted pro hac vice*)
MICHAEL BEST AND FRIEDRICH LLP
1776 Lincoln Street, Suite 1100
Denver, Colorado 80203
Telephone: (702) 745-4870
sjhorace@michaelbest.com

Todd Feltus (#019076)
Daniel P. Crane (#030623)
KERCSMAR FELTUS & COLLINS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
tfeltus@kfcfirm.com
dpc@kfcfirm.com

Attorneys for Defendants Frank Candelario, Sherri Candelario, and Shared Housing Solutions, LLC

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Recovery Housing Academy, LLC, an Arizona limited liability company; RAL Academy LLC, an Arizona limited liability company; Mona Guarino; and Isabelle Guarino,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>Frank Candelario and Sherri Candelario, husband and wife; Shared Housing Solutions, LLC,<br><br>Defendants/Counterclaim Plaintiffs. | Case No. 2:21-cv-02133-SMB<br><br>**COUNTERCLAIMS**<br><br>**JURY DEMANDED** |

For their Counterclaims against Recovery Housing Academy, LLC, RAL Academy LLC, Mona Guarino and Isabelle Guarino Smith (collectively, the “RHA Parties”), Frank Candelario, Sherri Candelario, Shared Housing Solutions, LLC and Kate’s House Foundation (collectively, “Candelario Parties”) allege the following:

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

## NATURE OF THE CASE, JURISDICTION, AND VENUE

1. The Candelario Parties bring these counterclaims to stop and remedy the continuing unlawful conduct of the RHA Parties, including the RHA Parties' infringement and misappropriation of the names, likenesses and original materials of the Candelarios for competitive commercial purposes, the infringement of the trademarks owned by the Candelario Parties, the tortious interference of the RHA Parties, the breaches of contract of the RHA Parties, the RHA Parties' false, and misleading advertising, and the defamatory statements meant to destroy the Candelarios' personal and professional reputations in the field of shared housing education, in which the Candelarios are and have been national experts in great demand for many years prior to their short nine-month relationship with the RHA Parties.

2. These counterclaims arise generally under the United States Copyright Law, 17 U.S.C. § 101 *et seq.*, the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, the laws of the United States relating to declaratory judgments, 28 U.S.C. §§ 2201 and 2202, and the common law.

3. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 2201.

4. This Court also has personal jurisdiction over the RHA Parties because the RHA Parties have consented to this Court's exercise of jurisdiction over it by way of filing their Complaint in this action.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) because RHA Parties are subject to this Court's personal jurisdiction with respect to this civil action.

## THE PARTIES

6. Frank Candelario is a resident of the state of Washington. He is the husband of Sherri Candelario.

7. Sherri Candelario is a resident of the state of Washington. She is the wife of Frank Candelario.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

8. Kate's House Foundation is 503(c)(3) Washington state not-for-profit corporation owned and operated by Frank Candelario and Sherri Candelario. Kate's House Foundation serves the mission of providing safe and affordable shared housing in great neighborhoods for men and women recovering from addition or incarceration.

9. Shared Housing Solutions, LLC ("Shared Housing Solutions") is a Washington State limited liability company owned by the Candelarios. Shared Housing Solutions provides a syndication fund to acquire new single family homes to be used by Kate's House Foundation.

10. Upon information and belief, Recovery Housing Academy, LLC f/k/a Shared Housing Academy ("RCA") is an Arizona limited liability company located in Maricopa County, Arizona.

11. Upon information and belief, RAL Academy, LLC ("RALA") is an Arizona limited liability company located in Maricopa County, Arizona.

12. Upon information and belief, Mona Guarino Smith is an Arizona resident living in Maricopa County.

13. Upon information and belief, Isabelle Guarino is an Arizona resident living in Maricopa County.

**The Candelarios**

14. Sherri Candelario earned a doctorate in pharmacology from the University of Washington Medical School, and is co-author or first author of scientific peer-reviewed research on the mechanisms of opioid action in the heart and brain.

15. Sherri Candelario's expertise in opioids, and the Candelarios' personal experience with finding a lack of appropriate recovery housing options for their daughter Kate, who suffered from opioid addiction, led to the formation of Kate's House Foundation in 2015. Kate's House Foundation provides shared housing that allows medications for men and women in recovery from addiction.

16. Frank Candelario has expertise in marketing and branding, as well as an academic background in property management. He was instrumental in marketing and

branding for an international conglomerate for 34 years, provided brand promotion and was the spokesperson for television and radio interviews. In 2015, Frank Candelario became a real estate broker in Washington state. He has purchased and rehabbed millions of dollars in homes for the Candelarios' real estate portfolio over the past six years.

17. Since 2016, the Candelarios have created, developed and refined a shared housing model and system for appreciating homes in safe neighborhoods, eliminating housing insecurity, that they call the Kate's House Model (Shared Housing Model). In this innovative system, people in recovery from substance abuse disorder and men and women with housing insecurities share a house using the Kate's House system and rules. More information about the innovative Kate's House Model is available at www.kateshousefoundation.org.

18. The Candelarios were among the first to provide homes to fully support medically assisted treatment for people with dual diagnoses of mental health issues and substance abuse disorder. They were among the first homes who did not force people to leave housing for breaking house rules or relapse.

19. Instrumental to their success, the Candelarios created the shared housing model to allow real estate investors to purchase single family homes that cash-flow up to 10 times typical net rent and provide a new model for shared housing that builds communities. The higher-than-average rents from shared housing incentivizes investors to provide funds for new housing.

20. Shared Housing Solutions was created by the Candelarios to serve as the investment arm for Kate's House Foundation and related projects.

21. The Candelarios developed the nationally recognized shared housing model that led to Kate's House Foundation homes, obtaining the first Washington state accreditation as Level II Medically Assisted Treatment homes in 2018. The accreditation has been renewed annually.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

22. The Candelarios joined in forming the Washington Alliance of Quality Recovery Residences (WAQRR), the state affiliate of the National Alliance of Recovery Residences in 2017 (NARR). NARR provides national standards for recovery homes. The Candelarios were instrumental in state legislation that now requires that WAQRR state accreditation for recovery homes is required for Washington state funding.

23. Frank Candelario's experience in branding led him to hire videographers and photographers to document the Candelarios' experience in creating the Kate's House Shared Housing Model. The Candelarios use their videos and photographs that document their real estate in all of their teaching presentations.

24. The Candelarios have become the preeminent national teachers for investment in shared recovery housing using their innovative Kate's House Shared Housing model.

25. The development of the Candelarios' media for their shared housing PowerPoint presentations dates back several years. The presentations that they created to teach and to market to real estate investment groups include photos and videos created by the Candelarios that depict their homes, personal history and photos of their daughter Kate. Their experience with Kate was the motivation to start Kate's House Foundation in 2015 to change the paradigm for recovery housing in the US. Kate's story is predominant in the Candelarios' shared housing PowerPoint presentations.

26. Following their Kate's House Model, the Candelarios have become highly sought-after speakers and national experts in the field of shared housing, including shared housing purchase, development, investment and operations. They were inducted into the "Investor Hall of Fame" in 2016 by Elite Legacy Real Estate Education, an international body that provides real estate education at symposiums.

27. In 2017, Elite Legacy Education asked the Candelarios to develop a curriculum to teach others the "Shared Housing" model they created and developed. They wrote the curriculum for a three-day class entitled "Shared Housing: Social Housing Strategies for Good," along with a comprehensive manual, a PowerPoint and 45 support

documents for their students, including the three-day class agenda, house rules and marketing materials that are instrumental for success.

28. The Candelarios taught the class they developed nationally at three-day live symposiums and 30-hour online classes that they presented from July, 2018 – March, 2020, when Elite Legacy Education went on hiatus during the pandemic.

29. After the Elite Legacy Education became dormant, the Candelarios retained their teaching materials, while continuing to teach by Zoom.

**Gene Guarino and the Candelarios**

30. The RHA Parties operate a family business that consists of hosting, advertising and presenting various educational programs.

31. The late Gene Guarino was the CEO, leader, owner, manager and visionary who ran these family businesses until his sudden and untimely COVID-19 death in mid-October, 2021. This tragic event blindsided many, including the Candelarios.

32. In October, 2017, the Candelarios first met Gene Guarino at an investor presentation in Kauai, Hawaii sponsored by Anderson Advisors. The Candelarios were featured speakers who were invited to discuss Kate's House Foundation and their novel shared housing model for vulnerable men and women.

33. The Candelarios were re-introduced to Gene Guarino through a mutual business contact on August 28, 2020. The Candelarios and Gene Guarino discussed by email in September, 2020 having the Candelarios present their shared housing development model at RALA, a business run by the Guarino family that organized and presented educational seminars and programs. As Sherri Candelario advised Gene Guarino at that time: "We wrote and taught a curriculum on shared housing models and have been teaching and mentoring housing national standards for years."

34. In anticipation of a possible independent contractor relationship in which the Candelarios taught classes at RALA, the Candelarios shared with Gene and Isabelle Guarino on October 8, 2020 several documents that the Candelarios had created, including: (i) a PowerPoint that the Candelarios developed called "Long Term Care-

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Adult Family Homes" that the Candelarios taught to classes on shared housing; (ii) a summary of the Candelarios' training of private students; and (iii) the outline of a book the Candelarios developed on Social Housing Strategies to teach shared housing.

**The Independent Contractor Agreements**

35. The Candelarios, working with Gene Guarino, individually entered into the Independent Contractor Agreements ("IC Agreements") attached to the Complaint as Exhibits 1 and 2, effective on February 2, 2021. The IC Agreements were prepared and presented to the Candelarios by Gene Guarino.

36. The IC Agreements were amended at the request of Gene Guarino to adjust compensation formulas on May 21, 2021. Complaint, Exhibit 3. At that time, he also promised the Candelarios he would raise their compensation under the IC Agreements after demand for the classes and revenues increased. Although demand and revenues dramatically increased in the months after May, 2021, the Candelarios' compensation under the IC Agreements was never increased.

37. The stated purpose of the IC Agreements was for the "creation, use and sale of a Shared Housing suite of products and offerings." The IC Agreements do not require the Candelarios to teach any classes or to appear at any events, either in person or remotely. They provide no schedule, no specified term and no required services. They simply provide formulas for the Candelarios' compensation should they choose to present or sell their classes or coaching services, and for the use of their materials and trademarks during the unspecified term of the IC Agreements.

38. These IC Agreements provided the following compensation to the Candelarios:

a. 10% of net proceeds for use of their presentation and information for a shared housing home study course during the unspecified term of the IC Agreements;

b. $5,000 for being the primary instructors and trainers for "a live 3-day training, in person or online;"

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

c. 10% commission on the direct sales of coaching or consulting support sold during a 3-day presentation, and 20% of the net amount (changed to 10% by amendment dated 5/21/21) collected for that support;

d. 80% of the net collected for additional support services after the initial support term has ended;

e. 80% of the net collected for student licenses to use the Candelarios' KATE'S HOUSE FOUNDATION trademark or a derivation of that mark;

f. By Amendment dated 5/21/21, the Candelarios would also receive 10% of the gross initial sales they made at a RHA/RALA speaking engagement.

39. The IC Agreements include a limited license for the RHA Parties to use the Candelario Parties' trademarks KATE'S HOUSE FOUNDATION and KATE'S HOUSE and derivatives of those names in connection with shared housing programs during the unspecified term of the IC Agreements.

40. The IC Agreements do not include any transfer of the intellectual property rights of any party, or a license to use any other party's intellectual property rights after the termination of the IC Agreements.

41. The IC Agreements were between existing and "any future companies that are created, owned or controlled by the Guarino family," and Frank Candelario and Sherri Candelario, individually. That Frank and Sherri Candelario were retained as independent contractors in their individual capacity is confirmed by the existence of separate IC Agreements for each of them, as well as the names of these IE Agreements ("Independent Contractor Agreement-Frank and Sherri Candelario") and the signatures to these IC Agreements by Frank and Sherri Candelario as individuals.

42. The IC Agreements include no entireties clause that would make the IC Agreements the exclusive source of the terms of the parties' agreements.

43. Gene Guarino orally assured the Candelarios that he did not claim any rights or interest in the materials that the Candelarios had prepared or authored that were incorporated into the RHA materials, and understood that the Candelarios had always

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

done and would continue to do their own shared housing teaching and consulting independent of RHA, and that this did not violate any agreements between the parties.

44. Pursuant to the IC Agreements and in preparation for those agreements, the Candelarios shared with the RHA Parties a hard drive they owned that contained their PowerPoint presentation and other shared housing presentation materials they had created, which the RHA Parties copied. Both parties understood that these materials were created and owned by the Candelarios, and that they could be used only in connection with the Candelarios' shared recovery housing programs while the IC Agreements were in effect.

45. From the time the parties entered into the IC Agreements through the date of Gene Guarino's death, Gene Guarino was the Candelarios' primary contact for the RHA parties. The Candelarios considered him a good friend and business associate. Together, the Candelarios and Gene Guarino co-founded Recovery Housing Academy (formerly known as Shared Housing Academy).

46. Pursuant to the IC Agreements, the Candelarios provided and presented their original teaching materials with slight stylistic modifications in 3-day RHA/RALA classes held in Arizona in February, May, July, and August, 2021. They also presented the 3-day class in Palm Harbor, Florida in October 2021, in the Candelarios' state-of-the-art studio.

47. For each of the shared housing classes and for related coaching and consultation services, RHA featured and promoted the Candelarios, including use of their names, likenesses, images, trademarks and personal story. Gene Guarino and RHA promoted the opportunity to learn from the Candelarios as the key feature of the RHA shared housing program, despite the fact that the Candelarios were not obligated to perform any particular services for any particular period of time under their IC Agreements.

48. Some students who took one of the classes signed up for coaching with the Candelarios. At the conclusion of the three-day RALA/RHA shared housing classes,

RALA pitched the availability of coaching by independent contractors Sherri and Frank Candelario for a substantial additional fee of up to $30,000, even though the IC Agreements did not require the Candelarios to perform any particular service for any particular time and they had the right to cease their independent contractor services at any time.

49. The coaching contracts that students signed were with RHA/RALA, not the Candelarios, and did not specify that they would receive their coaching from Frank Candelario or Sherri Candelario or any other specified RHA/RALA coach.

50. By not obtaining an agreement to secure particular services from the Candelarios for a specified period of time, RHA Parties assumed the risk that the independent contractor Candelarios may cease their RHA/RALA services at any time, notwithstanding whatever representations RHA chose to make about the identity of the RHA/RALA coaches in their pitches for student coaching.

51. During June 16-18, 2021, Sherri Candelario traveled to Phoenix to work with Gene Guarino to prepare for a Zoom event sponsored by Anderson Advisors, Las Vegas, NV. Anderson had more than 700 registrants on June 19, 2021 to hear the story of Kate's House Foundation and the Candelarios' Shared Housing model.

52. While Sherri Candelario was in Phoenix on that June trip, she and Gene Guarino worked on the order of the materials for the upcoming July three-day seminar. Ms. Candelario referenced for Mr. Guarino the "Social Housing" manual and "Social Housing" PowerPoint on her laptop that the Candelarios had prepared for Social Housing Strategies in 2018. Gene Guarino stated, "you have enough content." The only new content was "Medical School 101," authored by Sherri Candelario based on her research on opioids and experience with treatment for drug abuse, which she had presented at the May 2021 three-day seminar.

53. In August, 2021, Gene Guarino advised the Candelarios that he had agreed to present the Shared Housing training materials at a November meeting of the Ohio Real Estate Investors Association ("REIA"), at the Colorado REIA in November, and at the

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Arizona REIA in January, 2022. He stated that the Candelarios could attend for one day, but that this was his presentation to give, even though he was presenting the Candelarios' material. He did not ask the Candelarios to personally attend any of these events. Gene stated, "You can attend if you like, but the REIA group leader has specifically requested that I present." He further stated that he knew it was a hardship for the Candelarios to attend personally, and that they were welcome to come, but he would handle it.

54. The Candelarios have permanent custody of their 3-year-old granddaughter and 5-year-old grandson, and if both the Candelarios are travelling, that can create a major disruption to their care, including the care of their grandson, who has a medical condition that requires constant monitoring. Gene Guarino and other members of the Guarino family were made aware of these limitations when the Candelarios first began to work with the RHA Parties.

55. Gene Guarino was particularly sensitive to the needs of the Candelarios' small children and understood that travel was difficult for the Candelario family. He understood and acknowledged that the Candelarios had multiple commitments, including commitments to these young children. He told them many times and in many ways that they need not travel to any events except when it worked for them, and that their personal presence, together or individually, was never required at any event.

**The End of the Relationship Between the RHA Parties and the Candelarios**

56. Gene Guarino unexpectedly died from COVID-19 complications in mid-October, 2021.

57. After that, the relationship suddenly turned into something entirely different than the friendly and supportive business collaboration that the Candelarios had enjoyed while Gene Guarino was in charge. What had been a mutually supportive and successful business partnership suddenly turned into a nightmare for the Candelarios.

58. After the unexpected passing of their friend, colleague, and principal contact with the RHA Parties, the Candelarios offered to speak in his place at his Ohio REIA event as a favor to the Guarino family, and agreed to help out with the Colorado

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

REIA event. The IC Agreements did not require this voluntary offer to try to fulfill Gene Guarino's speaking engagement contracts.

59. The Ohio REIA marketing materials that had featured Gene Guarino as the speaker still included him in the printed publications. A picture of Sherri Candelario was placed at the front door of the ballroom and online materials were changed to reflect Frank and Sherri Candelario as speakers the week of the presentation. The Candelarios attended and presented in person at that event, even though Sherri Candelario had broken her foot the night before the event and needed to use a wheelchair and crutches at the event.

60. Under Gene Guarino, RHA/RALA consistently had provided sales and marketing support for the RHA/RALA shared housing events at which the Candelarios presented. RALA's new short-tenured CEO, Emmanuel Guarino, made repeated promises to the Candelarios that RALA/RHA would provide sales and marketing support for the Ohio event, which drew several hundred people. RALA failed to do so. None of the RALA or RHA sales or marketing team attended or otherwise appeared to help sign up attendees for the upcoming classes.

61. The Executive Director of the Colorado REIA held a Zoom call with the Candelarios on October 25, 2021 to discuss the upcoming Colorado REIA event scheduled for November 9-13, 2021. The Candelarios agreed to tag-team the event or appear by Zoom, as the five day commitment was too long for them to be away from their small children. The Colorado REIA representative agreed to have the Candelarios present by Zoom November 9, 2021 due to Sherri's foot injury, which they did for10 people.

62. One day earlier, on November 8, 2021, Plaintiff Isabelle Guarino Smith told the Candelarios that the Colorado REIA representative insisted that RALA honor the contract that Gene Guarino had signed, and personally appear at the conference. She insisted that the Candelarios both travel over a thousand miles on two days' notice to personally attend the event in Colorado (which at that time had one of the highest

COVID-19 infection rates in the country) on November 10, 2021. Sherri Candelario's injury precluded her personal attendance, but Frank Candelario traveled to Colorado on short notice and at great personal inconvenience and presented to 11 people and three guests of the Candelarios.

63. After travelling cross country on short notice as a favor to the Guarinos for what turned out to be a 1-hour presentation for 11 people, Frank Candelario was berated by both the Colorado REIA representative and Isabelle Guarino for not securing Sherri Candelario's personal attendance at the event at which Gene Guarino had contracted to speak. Isabelle Guarino told Frank Candelario that the Candelarios are under contract "to travel anywhere" she tells them to travel. Frank Candelario responded that "travel assignments are not a good fit for us as parents."

64. Having seen their efforts to help the Guarino family spurned, and that the RHA Parties were making demands of the Candelarios that are not part of the IC Agreements and their understandings and course of dealing with Gene Guarino, the Candelarios concluded that the death of Gene Guarino had radically changed their relationship with the Guarino family into something entirely different and unacceptable. These new travel demands the surviving Guarinos were imposing ("Travel on Command Demands") were never part of the Candelarios' agreements and understandings with the RHA Parties.

65. The Candelarios had heard from persons close to the RHA Parties that the new RHA Parties' management "wanted to own this space" and intended to replace them and use their materials with new instructors. These new Travel on Command Demands confirmed to the Candelarios that the new management of the RHA Parties was pushing them out.

66. On the next morning, November 11, 2021, Plaintiff Isabelle Guarino Smith sent Sherri Candelario a text message asking Sherri Candelario to participate in an urgent Zoom call with Isabelle and Mona Guarino. In the Zoom call, Sherri Candelario advised Isabelle Guarino Smith that the IC Agreements are for teaching three-day classes and do

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

not require them to travel to and personally appear at REIA groups, and they would not agree to do that.

67. Isabelle Guarino Smith suggested in that call that the parties pause the relationship for 2022, then generally discussed terms of a termination. She acknowledged that the Candelarios owned materials created before their work with RALA: "We know about Kate's House, Shared Housing Solutions." ". . . I don't think that that is going to be an issue, but also I am with you. Let's get everything on paper of what can and can't, you know, be used going forward . . ." "[d]o you want to write up, like, a termination letter?" ". . .[w]e just part ways and it is okay."

68. Isabelle Guarino Smith followed up, asking again by email on November 18, 2021 for "the termination letter with your terms," noting that "we would really like to come to a conclusion and wrap this conversation/agreement up sooner rather than later," and anticipating that there may need to be "some back and forth until we come to a conclusion." She asked Sherri Candelario in that same message, "Can I expect to see the termination letter with your terms by the end of this week? Is that possible?"

69. That same day, Sherri Candelario responded, stating, "When we spoke last week, this termination letter was due at the end of the week. We have it almost complete. Should I make the contract termination dated November 19, 2021? Please let us know." Less than fifteen minutes later, Isabelle Guarino Smith responded, stating, "The 19th should work fine. Thank you."

70. The Candelarios complied, providing the requested termination letter with their proposed terms the next day, Friday November 19, 2021. Complaint, Exhibit 5. The termination letter confirmed the agreed termination date of November 19, 2021. To facilitate the "sooner" parting of the ways that Isabelle Guarino Smith had asked for, the Candelarios proposed that the virtual course offered by RALA *should* be cancelled. The letter also suggested that RALA *should* transfer its active students to other coaches as was suggested in an email from Isabelle Guarino Smith on November 12, 2021. These suggestive rather than mandatory words were not an accident. They were made in

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

response to the RHA Parties' explicit request for the Candelarios' termination terms and, if not acceptable to the RHA Parties, invited further discussion on transitional proposals, but such proposals never came.

71. The Candelarios were prepared to explore a different resolution to termination if their proposed terms were not acceptable and to continue coaching if RHA could not provide other coaches—and have done so without seeking any further compensation in response to the requests of some students. To their surprise, RHA Parties, after earlier confirming that they agreed to November 19, 2021 termination date, never presented any termination or transitional issues proposal.

72. Instead, the RHA Parties immediately initiated their planned takeover of the shared housing teaching space, in which they would force out the Candelarios but continue to present and profit from the use of their materials. They cancelled the December 3rd classes, filed a breach of contract and defamation lawsuit against the Candelarios and their fundraising LLC, and told students that the Candelarios had "walked away." They sent mailings to the coaching students advising them that the Candelarios were no longer associated with RHA and that they could not say more "due to legal reasons," falsely implying that the Candelarios were in trouble with the law or acting illegally. RHA then went on to describe its "incredible new support team" and its new support documents, many of which misappropriate the material that the Candelarios brought to their relationship with RHA Parties.

73. These actions were taken in a coordinated and concerted effort by the RHS Parties to destroy the Candelarios' reputation and thereby enhance the chances that they could successfully market the inferior substitute training they were trying to sell to students.

**The Candelario Parties' Intellectual Property**

74. Frank and Sherri Candelario authored and own their original copyrighted material ("Candelario Copyrighted Teaching Materials") that includes, but is not limited to the following:

a. HOUSING FOR SOCIAL GOOD, U.S. Copyright Reg. No. TX0009056716;

b. Shared Housing Strategies Presentation 2018, U.S. Copyright Reg. No. TX 9-055-057;

c. Shared Housing Strategies Presentation 2021, U.S. Copyright Reg. No. TX 9-055-056;

d. Student Materials for Social Housing Strategies: Investing for Profit and Purpose, U.S. Copyright Reg. No. TX 9-055-055.

Copies of these registrations are attached as Exhibits 1-4.

75. The Candelario Parties own or are licensed to use trademarks that include the following ("Candelario Trademarks"):

a. KATE'S HOUSE FOUNDATION and Design, U.S. Reg. No. 6304269;

b. KATE'S HOUSE FOUNDATION and Design, U.S. Reg. No. 6304270;

c. KATE'S HOUSE, U.S. Reg. No. 6304268;

d. KATE'S HOUSE, U.S. Reg. No. 6304267;

e. SHARED HOUSING SOLUTIONS and Design, U.S. Ser. No. 97072531;

f. SHARED HOUSING SOLUTIONS and Design, U.S. Ser. No. 97072507;

g. SHARED HOUSING SOLUTIONS, U.S. Ser. No. 97066284.

Copies of these registrations and pending applications are attached as Exhibits 5-11.

76. The Candelario Parties have built the goodwill and value of the Candelario Trademarks nationally over the course of the last seven years and have acquired distinctiveness in these marks through their broad use in commerce nationally, through the Candelario's interstate shared housing work and teaching that makes extensive use of these marks, and through unsolicited publicity and media coverage about the social good and profitable business opportunities represented by these marks.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

77. The Candelarios own the rights to privacy, publicity and use of their names, images and likenesses ("Candelario NIL Rights"), including their rights to endorse or withhold their endorsement of any product, service or business.

78. The Candelarios' Copyrighted Teaching Materials, Candelario Trademarks and Candelario NIL Rights collectively are referred to as the "Candelario IP."

**The RHA Infringement and Misappropriation of the Candelario IP**

79. In connection with the termination of the IC Agreements, the Candelario Parties delivered a notice letter to the RHA Parties on November 19, 2021 revoking any further rights for the RHA Parties to use the Candelario IP ("Candelario IP Notice Letter"). A copy of this letter is attached as Exhibit 12.

80. The RHA Parties did not respond to the November 19 termination letter or the Candelario IP Notice Letter with any substantive responses or counterproposals.

81. Instead, despite the agreed termination of the IC Agreements on November 19, 2021, and the notice to cease further use of the Candelario IP, the RHA Parties have continued to use the Candelario IP to promote their products and services, and are continuing such unauthorized use.

82. For example, after the termination, the RHA Parties continued to promote their goods and services using the names, images and likenesses of the Candelarios, using the Candelario Trademarks, and using a version of one or more of the Candelario Copyrighted Teaching Materials. *See, e.g.* the materials attached as Exhibit 13.

83. Counsel for the Candelario Parties sent a cease and desist letter to counsel for the RHA Parties on December 16, 2021, a copy of which is attached as Exhibit 14, objecting to and providing examples of the RHA Parties' continued infringement of the Candelario IP. Counsel for the RHA Parties responded, stating (incorrectly) that they had removed all references to the Candelarios, but asserted that the RHA Parties had the right to use the teaching and coaching materials that the Candelarios had created and used in their shared housing programs presented at RHA/RALA.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

84. Isabelle Guarino told the Candelarios after the termination of the relationship that the team wanted to use recordings of the Candelarios presenting their shared housing materials in future RHA classes, including the scheduled December 3rd class. The Candelarios objected to RHA's plans to present—after the termination of the IC Agreements—these recordings of them teaching their shared housing material.

85. As made clear in their communications, in other communications, and in the "Declaratory Judgment" that the RHA Parties seek, the RHA Parties now assert that they own the Candelarios Copyrighted Teaching Materials and can use them as they please and can retain the proceeds and profits from the presentation and sale of such materials.

86. The Candelario Parties never sold or assigned any of the Candelario IP to the RHA Parties, nor did they extend any licenses to use any of the Candelario IP after the November 19, 2021 termination of the IC Agreements. All such licenses were expressly revoked and expired on the agreed termination date.

87. The RHA Parties nevertheless continued to use without authorization the Candelario IP after termination of the IC Agreements to promote, present and sell shared housing classes and materials, including, on information and belief, versions of the Candelarios' coaching materials that substantially incorporated the Candelario Copyrighted Teaching Materials.

**COUNT ONE**
**(Copyright Infringement Under 17 U.S.C. § 101 *et seq.* against All RHA Parties)**

88. The Candelarios incorporate the allegations of Paragraphs 1-87 above as if fully restated.

89. The Candelarios created and own exclusive rights in the Candelario Copyrighted Teaching Materials literary works, which are publications and teaching materials that they created for teaching and coaching investors about shared recovery housing, based on their innovative and successful experience as leaders in the industry.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

90. The Candelarios have registered the Candelario Copyrighted Teaching Materials with the U.S. Copyright Office. These materials are registered under Registration Nos. TX 9-055-055, TX 9-055-057, TX 9-055-057 and TX 9-056-716. *See* Exhibits 1-4.

91. The Candelarios used the Candelario Copyrighted Teaching Materials in connection with their teaching and coaching while they were independent contractors of the RHA Parties, and provided the RHA Parties access to these materials.

92. The rights of the RHA Parties to use the Candelario Copyrighted Teaching Materials or any derivative works incorporating those materials ended upon the agreed termination of the IC Agreements on November 19, 2021.

93. The Candelarios never assigned or conveyed any rights to the Candelario Copyrighted Teaching Materials to any other party, including any of the RHA Parties, aside from a limited license to RHA Parties to use, display, distribute and assist with derivative works of the Candelario Copyrighted Teaching Materials while the IC Agreements remained in effect. All such license rights terminated on November 19, 2021.

94. Notwithstanding the termination of the IC Agreements, RHA parties, on information and belief, continue to use, publish, sell and distribute unauthorized versions of some or all of Candelario Copyrighted Teaching Materials or substantially similar derivative versions of those materials.

95. Through their conduct, RHA Parties have violated the Candelarios' exclusive rights under 17 U.S.C. § 106 to reproduce each of the Candelario Copyrighted Teaching Materials, to prepare derivative works of each of the Candelario Copyrighted Teaching Materials, to distribute copies of each of the Candelario Copyrighted Teaching Materials, to publicly perform each of the Candelario Copyrighted Teaching Materials, and to publicly display each of the Candelario Copyrighted Teaching Materials.

96. The RHA Parties have willfully infringed upon the Candelario Copyrighted Teaching Materials in violation of Title 17 of the U.S. Code, because they knew or

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

should have known that they did not have a legitimate license for the Candelario Copyrighted Teaching Materials after the termination of the IC Agreements.

97. The RHA Parties' copyright infringements have damaged the Candelarios in an amount to be proven at trial.

98. As a result of the RHA Parties' violation of Title 17 of the U.S. Code, the Candelarios are entitled to actual damages and profits pursuant to 17 U.S.C. §504(b).

99. As a result of the RHA Parties' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs of this action pursuant to 17 U.S.C § 505.

100. The Candelarios are also entitled to injunctive relief to prevent or restrain further infringement of their copyrights pursuant to 17 U.S.C. § 502.

**COUNT TWO**
**(Federal Trademark Infringement under the Lanham Act, 15 U.S.C. §1125(a))**

101. The Candelario Parties incorporate the allegations of Paragraphs 1-100 above as if fully restated.

102. The Candelario Parties own the Candelario Trademarks and related marks in connection with shared recovery housing related services. These include the marks KATE'S HOUSE, KATE'S HOUSE FOUNDATION, and SHARED HOUSING SOLUTIONS, with and without accompanying designs. The federal registrations and pending applications for the Candelario Trademarks are attached as Exhibits 5-11.

103. The Candelario Parties have used the Candelario Trademarks in commerce since well before any relationship with the RHA parties. These marks have generated substantial goodwill and recognition in the shared recovery housing industry and directly suggest an association with and endorsement by the Candelario Parties.

104. The limited license that the Candelario Parties granted the RHA Parties in the IC Agreements for use of Candelario Trademarks expired when those agreements ended by mutual agreement on November 19, 2021.

105. The RHA Parties have willfully continued to use the Candelario Trademarks in commerce to promote their business without authorization after the termination of the IC Agreements.

106. In addition, the RHA Parties have promulgated and continued advertising after the termination of the IC Agreements that uses the Candelarios' names, images and likenesses and falsely suggests a continued association between the Candelarios and the RHA Parties, and falsely suggests that the Candelarios continue to endorse RHA Parties' products and services.

107. This advertising contains false or misleading representations of fact that are likely to cause confusion, mistake, or to deceive as to the affiliation, connection of association of the Candelarios with RHA Party products and services, in violation of 15 U.S.C. § 1125(a)(1).

108. RHA Parties have committed the acts alleged herein with the deliberate intent and design to trade on the Candelario Marks and on the valuable goodwill attached to those marks, and RHA Parties' acts have been and are willful and wanton.

109. As a direct and proximate result of RHA Parties' acts of infringement, Candelario Parties have been and continue to be injured in their business and property, and have sustained and will continue to sustain substantial damage to their business, goodwill, reputation, and profits. The Candelario Parties have also been deprived of money and profits that they otherwise would have earned had the RHA Parties' illegal and improper conduct not occurred. The precise nature and amount of these accrued and continuing damages are not presently known to the Candelario Parties at this time but will be proven at trial. As a result of RHA Parties' wrongful conduct, the Candelario Parties have also been forced to incur attorneys' fees and costs.

110. Unless the RHA Parties are enjoined from the unlawful infringement of the Candelario Marks and false advertising as alleged herein, the Candelario Parties will continue to suffer irreparable harm in the form of confused customers, lost sales and profits, harm to their goodwill and reputation, and other losses.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

111. The Candelario Parties are entitled to an award of RHA Parties' profits, as well as the Candelario Parties' damages in an amount to be proven at trial, and costs of this action, pursuant to 15 U.S.C. § 1117.

112. The Candelario Parties also seek to have all of the RHA Parties' materials and advertisements bearing any of the Candelario Trademarks, or the names, images or likenesses of the Candelarios, delivered up and destroyed pursuant to 15 U.S.C. § 1118.

113. As a result of RHA Parties' malicious and intentional infringement of the Candelario Parties' trademark rights and rights to not involuntarily endorse RHA's products and services though RHA's false advertising, the Candelario Parties are also entitled to an award of treble damages, prejudgment interest, and reasonable attorneys' fees against Defendant, pursuant to 15 U.S.C. § 1117.

**COUNT THREE**
**(Violation of Common Law Right of Publicity:**
**Misappropriation of Names and Likenesses)**

114. The Candelarios incorporate the allegations of Paragraphs 1-113 above as if fully restated.

115. Arizona and other states recognize a common law right of publicity, whereby an individual holds the exclusive right to control the public dissemination of their name and likeness for commercial purposes.

116. The RHA Parties may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of a person without their express consent to such use.

117. Nevertheless, RHA Parties unlawfully published, printed, displayed and/or publicly used the Candelarios' images, likenesses and identity on their websites, on their advertising and on the materials that they present and commercially distribute in connection with their shared housing education services, after the termination of the IC Agreements with the Candelarios.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

118. Each of the Candelario's names and faces were and may still be shown in the materials described above, and the Candelarios are readily identifiable in these materials.

119. The Canderlarios' consent for RHA Parties to use their names and likenesses was expressly revoked on November 19, 2021, but the RHA Parties' commercial use of the Candelarios' names and likenesses has nevertheless continued.

120. This misappropriation was done and continued intentionally by the RHA Parties for purposes of trade and/or commercial advertising to confuse and divert potential investment students by falsely suggesting that the Candelarios have a continued affiliation with or endorse the RHA Parties or their continuing shared housing programs.

121. The RHA Parties have caused and will continue to cause irreparable harm to the Candelarios, their reputations and brands by suggesting a continued involvement with the RHA Parties and their endorsement of the RHA Parties' services. The Candelarios now compete with the RHA Parties in connection with shared housing recovery educational services, and the RHA Parties are attempting to divert business and profit by creating the false illusion that the Candelarios continue to endorse and have an affiliation with the RHA Parties, or continue to teach at RHA.

122. The RHA Parties have damaged the Candelarios in an amount to be proven at trial as a direct result of the RHA Parties unauthorized use of their names and images.

123. The RHA Parties have, through this conduct, earned and withheld profits attributable directly or indirectly to the unlawful use of the Candelarios' images, thereby entitling the Candelarios to disgorgement of such ill-gotten gains and unjust enrichment in an amount to be established at trial.

124. The RHA Parties' conduct set forth above was willful and wanton and/or based on malice and evil motives. As a result, the Candelarios should be awarded punitive damages against the RHA Parties.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

**COUNT FOUR**
**(Defamation)**

125. The Candelarios incorporate the allegations of Paragraphs 1-124 above as if fully restated.

126. At and around the time that the IC Termination occurred, the RHA Parties published false and defamatory statements about the Candelarios.

127. These false and defamatory statements include communications to RHA students by RHA's Krista Salari shortly after the termination of the IC Agreements, telling them that the Candelarios have "chosen to step away from RHA" and "that is all we can legally share," but "we would never walk away and abandon your goals to open a shared home." These statements falsely suggest that the Candelarios have walked away from obligations to these students, are in trouble with the law, and stepped away for reasons unknown to RHA.

128. These false and defamatory statements include statements to third parties that the break between the RHA Parties and the Candelarios was happening "because something happened in Colorado with Frank."

129. These false and defamatory statements include statements and suggestions to students that the Candelarios had refused to continue coaching them and "walked away" from their goals to open a shared home.

130. On information and belief, RHA Parties further published statements to students and other consumers of their services and other in the industry that the Candelarios had walked away for no reason and the Candelarios wanted to hurt the Guarino family.

131. Upon information and belief, the RHA Parties have published the same or substantially similar false and defamatory statements, both verbally and in writing, to numerous others.

132. The RHA Parties' publications as set forth above contain false and defamatory statements of fact concerning the Candelarios that were authored and published by RHA Parties.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

133. Each of the statements published by RHA Parties are factually false, and to the extent any of RHA Parties' statements appear to convey an opinion, they are actionable because they imply the existence of additional undisclosed facts which are false.

134. RHA Parties' statements are false and defamatory because, among other things, they tend to bring the Candelarios into disrepute, contempt, or ridicule.

135. RHA Parties made each and every defamatory statement knowing that said statements were false or acting in reckless disregard of the truth of the defamatory statements; in the alternative, the RHA Parties were negligent by failing to ascertain the truth of the defamatory statements before making them.

136. RHA Parties' statements, singularly or in combination, have exposed and continue to expose the Candelarios to public contempt. The statements have impeached and continue to impeach the morality, honesty, business and other competence, and integrity of the Candelarios, have damaged the Candelarios' personal and professional reputations, and have subjected them to ridicule in the eyes of customers, independent contractors, industry organizations, friends, acquaintances, and the general public.

137. The RHA Parties' statements, singularly or in combination, have also caused the Candelarios to suffer economic harms, damages, and losses.

138. The RHA Parties' conduct set forth above was willful and wanton and/or based on malice and evil motives. As a result, the Candelarios should be awarded punitive damages against the RHA Parties.

**COUNT FIVE**
**(Breach of Contract)**

139. The Candelarios incorporate the allegations of Paragraphs 1-138 above as if fully restated.

140. The RHA Parties breached the IC Agreements by unilaterally changing them without the consent of the Candelarios to require the Candelarios to travel to shared housing educational or promotional events throughout the country at the command of the

RHA Parties ("Travel on Demand Command"). This unilateral change was fundamentally inconsistent with the Candelarios' position as independent contractors, and a fundamental reversal of the cooperative relationship between the parties that existed when Gene Guarino ran the RHA businesses.

141. The RHA Parties' Travel on Demand Command breached the IC Agreements by fundamentally and unilaterally changing the responsibilities of the Candelarios and the nature of the IC Agreements. The IC Agreements by their terms do not require the Candelarios to personally attend events, much less require that they both attend such events and leave behind the young grandchildren that they care for and have custody of (including a special needs grandchild), much less require that they do so on command during a pandemic.

142. In addition, the RHA Parties have further breached the IC Agreements by failing to pay the Candelarios the compensation to which they were entitled under the IC Agreements.

143. The RHA Parties further breached the IC Agreements by terminating and refunding coaching contracts with students rather than provide alternative coaches or seek the assistance of the Candelarios if they were unable to provide new coaches or convince the students to accept the new coaches. Any refunds that RHA Parties provided were provided voluntarily, since, as they advised students seeking refunds, their coaching contracts were with RHA/RALA and did not specify any particular RHA/RALA coaches.

144. The Candelarios have been damaged by RHA Parties' breaches in an amount to be proven at trial.

**COUNT SIX**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

145. The Candelarios incorporate the allegations of Paragraphs 1-144 above as if fully restated.

146. Under Arizona law and the law of other states, there is an implied covenant of good faith and fair dealing in every contract.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

147. A party violates this covenant if he or she acts in a manner that denies the other party the reasonably expected benefits of the contract

148. The RHA Parties breached the implied covenant of good faith and fair dealing by unilaterally changing the nature and terms of the IC Agreements by imposing the new Travel on Demand Command, which denied the Candelarios their expected benefit under the IC Agreements of having the discretion to decide for themselves which events which of them would personally attend.

149. The RHA Parties further breached the covenant of good faith and fair dealing by telling their students and others that the Candelarios had "walked away" from their obligations to them and to RHA, while knowing full well that they had orchestrated the forced resignation of the Candelarios with the Travel on Command Demand, all in an effort to further their plan to push out the Candelarios and "take over" the shared housing education business.

150. The Candelarios have suffered cand continue to suffer damages from the RHA Parties' breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

**COUNT SEVEN**
**(Promissory Estoppel)**

151. The Candelarios incorporate the allegations of Paragraphs 1-150 above as if fully restated.

152. Gene Guarino, as CEO of RHA and RALA, promised the Candelarios that, among other things:

a. he acknowledged that the Candelarios had taught shared recovery housing classes for several years and had developed their own materials and PowerPoint slide deck, and that the Candelarios owned these materials and RALA/RHA made no claim to such materials;

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

b. that the Candelarios could continue to teach shared housing classes and "do your own thing" with respect to teaching and coaching apart from RALA and RHA;

c. that the Candelarios could choose what events they wanted to attend in person, and which of them they would attend, because he was aware that they had custody of their grandchildren, including a special needs child;

d. that RALA/RHA would raise the Candelarios' independent contractor compensation as demand and revenues rose after May, 2021.

153. RALA's new short-tenured CEO, Emmanuel Guarino, made repeated promises to the Candelarios that RALA/RHA would provide sales and marketing support for the November Ohio REIA event, as it had for prior events at which the Candelarios presented. The Candelarios, in reliance on this promise, arranged to travel to Ohio from Florida to attend this event in person, and Sherri Candelario did so with a broken foot. Several hundred people attended this event. In breach of this promise, none of the RALA/RHA sales or marketing team attended or otherwise appeared to help sign up attendees for the upcoming classes.

154. RHA Parties did foresee or should have reasonably foreseen that their promises would cause the Candelarios to rely on those promises.

155. The Candelarios actually and reasonably relied to their detriment on these promises made by the RHA Parties.

156. The Candelarios have suffered and will suffer damages including, but not limited to, their forced termination of the IC Agreements, RHA's unlawful misappropriation of the Candelario IP Rights, lost revenue and profits, and further damages to be determined at trial.

**COUNT EIGHT**
**(Unjust Enrichment)**

157. The Candelarios incorporate the allegations of Paragraphs 1-156 above as if fully restated.

158. The RHA Parties have been enriched by retaining money paid to them in connection with their use or sale of materials containing Candelario Copyrighted Teaching Materials, Candelario Trademarks and/or Candelario names and mages since November 19, 2021, when the RHA Parties' license to use any such materials expired. The RHA Parties have been further enriched by retaining sums due to the Candelarios under the IC Agreements.

159. There is no justification for the enrichment of RHA Parties at the expense of the Candelarios.

160. RHA Parties have been, and will continue to be, unjustly enriched if they are permitted to retain the Candelarios' money.

161. If the Court determines the Candelarios have no legal remedy, unjust enrichment relief is appropriate.

**COUNT NINE**
**(Intentional Interference with Contract and Prospective Contractual Relations)**

162. The Candelarios incorporate the allegations of Paragraphs 1-161 above as if fully restated.

163. The Candelarios have a valid contractual relationship or business expectancy with customers, independent contractor support providers, and industry organizations, including relationships with Anderson Advisors, Arizona Real Estate Association and the Ohio Real Estate Association.

164. RHA Parties know of the Candelarios' contractual relationship or business expectancy with such customers, independent contractor support providers, and industry organizations.

165. RHA Parties' intentional interference has induced or caused a breach or termination of the Candelarios' contractual relationship or business expectancy with customers, independent contractor support providers, and industry organizations.

166. RHA Parties' interference was without excuse or justification.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

167. The RHA Parties' interference was and is improper as to motive and means.

168. The Candelarios have suffered resultant damages in an amount to be proven at trial.

169. The RHA Parties' conduct set forth above was willful and wanton and/or based on malice and evil motives. As a result, the Candelarios should be awarded punitive damages against the RHA Parties.

**COUNT TEN**
**(Civil Conspiracy)**

170. The Candelarios incorporate the allegations of Paragraphs 1-169 above as if fully restated.

171. Isabelle Guarino Smith, Mona Guarino, Recovery Housing Academy, LLC and RAL Academy, agreed and thereupon accomplished the underlying torts of intentional interference with contractual relations and prospective contractual relations, defamation, and interference and invasion of right of publicity and privacy rights, which they, as co-conspirators, agreed to commit.

172. As a result thereof, RHA Parties' actions have caused and continue to cause the Candelarios to suffer damages.

173. The RHA Parties' conduct in this case was improper and outrageous, and their actions evidence an evil motive and intent. The RHA Parties' improper conduct was committed for the sole purpose of injuring the Candelarios and enriching the RHA Parties.

174. The RHA Parties' conduct set forth above was willful and wanton and/or based on malice and evil motives. As a result, the Candelarios should be awarded punitive damages against the RHA Parties.

**COUNT ELEVEN**
**(Aiding and Abetting)**

175. The Candelarios incorporate the allegations of Paragraphs 1-174 above as if fully restated.

176. Isabelle Guarino Smith, Mona Guarino, Recovery Housing Academy, LLC and RAL Academy, LLC committed the torts of intentional interference with contractual relations and prospective contractual relations, defamation, and interference and invasion of right of publicity and privacy rights as set forth above.

177. Each of the RHA Parties knew that the other RHA Parties' conduct constitutes intentional interference with contractual relations and prospective contractual relations, defamation, and interference and invasion of right of publicity and privacy rights and, under Arizona law, such knowledge may be inferred from the circumstances.

178. Each of the RHA Parties substantially assisted or encouraged the other in the subject misconduct.

179. Each of the RHA Parties is therefore liable for aiding and abetting the other RHA Party member's torts.

180. Each RHA Party member's conduct in this case was willful and wanton and/or based on malice and evil motives. As a result, the Candelarios should be awarded punitive damages against each of the RHA Parties.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Candelario Parties pray for judgment against the RHA Parties as follows:

1. A finding of liability against the RHA Parties on each Count set forth above;
2. Compensatory damages against the RHA Parties for each Count set forth above in an amount to be proven at trial;
3. Preliminary and permanent injunctive relief to prevent further use and misappropriation of the Candelario Copyrighted Teaching Materials, the Candelario Trademarks, and the Candelario NIL Rights;

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

4. As to Count I, for an award of actual damages and disgorgement of profits as provided by 17 U.S.C. § 504 in an amount to be proven at trial; an injunction preventing the RHA Parties and all those acting on concert with them from further infringement of all copyrighted works of the Candelarios pursuant to 17 U.S.C. § 502; and costs of litigation against RHA Parties pursuant to 17 U.S.C. § 505;

5. As to Count II, for actual damages and disgorgement of profits; an injunction preventing the RHA Parties and all those acting on concert with them from further infringement of the Candelario Trademarks and requiring the surrender and destruction of RHA Parties' materials and advertisements bearing any of the Candelario Trademarks pursuant to 15 U.S.C. § 1118; and treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1116 and 1117(a).

6. For an award of punitive damages in such amounts as may be determined are required to, among other things, punish RHA Parties and each of them for their intentional, outrageous, and wrongful acts;

7. For pre-judgment and post-judgment interest on all damages at the highest rate allowed by law;

8. For unjust enrichment relief (alternative remedy);

9. For an award of attorneys' fees and costs incurred by the Candelario Parties;

10. For such other and further relief as the Court determines is just and proper under the circumstances of this case.

**JURY DEMAND**

Defendants demand trial by jury on all matters and issues that may be tried by a jury.

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

DATED this 21st day of January, 2022.

MICHAEL BEST AND FRIEDRICH LLC

By: *Stephen J. Horace*
Stephen J. Horace
1776 Lincoln Street, Suite 1100
Denver, Colorado 80203

KERCSMAR FELTUS & COLLINS PLLC
Todd Feltus
Daniel P. Crane
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251

Attorneys for Candelarios

Kercsmar Feltus & Collins PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001